*1091
 
 OPINION
 

 Per Curiam:
 

 On appeal, appellants Rudi and Vicki Semenza contest the district court’s determination that their claim was brought without reasonable grounds. This determination provided the basis for an award of attorney’s fees against the Semenzas and in favor of respondent Alan Means. The Semenzas also contend that the district court erroneously failed to include the costs awarded to Means as part of the costs they were awarded as a prevailing party against respondent Caughlin Crafted Homes (Caughlin). Cross-appellant Caughlin asserts that the district court erroneously awarded full attorney’s fees to appellants. For reasons discussed hereafter, we conclude that appellants’ arguments have merit and that cross-appellant’s position lacks merit. Accordingly, we vacate the district court’s order in part and affirm in part.
 

 FACTS
 

 In 1991, Rudi and Vicki Semenza purchased a lot developed by Caughlin, upon which Caughlin subsequently constructed a home for the Semenzas. While the Semenzas’ home was under construction, it was discovered that several of Caughlin’s homes exhibited slight flooding in their crawl spaces. Caughlin attempted to remedy these problems. The Semenzas moved into their home in October 1991, and in January 1993, after a heavy snowfall and subsequent rainstorms, the Semenzas’ basement flooded, damaging the house, furniture, and personal effects. It was subsequently determined that an adequate foundation drainage system had not been installed in the house. Although a Caughlin construction superintendent, Mr. Anderson, instructed an unlicensed contractor to install a complete drainage system for which Caughlin was billed, only an inadequate, partial drainage system was installed. On May 3, 1993, after months of negotiations, the Semenzas filed their complaint against Caughlin and respondent Alan Means, who was the president, a shareholder, and the primary force behind Caughlin. The complaint asserted theories of breach of warranty, negligence, strict liability, and fraud/intentional misrepresentation.
 

 The Semenzas included Means in their complaint because they believed him to be the alter ego of Caughlin. They averred that at the time of their purchase, Caughlin’s real estate agent led them to believe that Means was the primary force behind the Caughlin Ranch development. Several publications the Semenzas received indicated that Means was personally involved in the planning of each of the homes in the development. One brochure the
 
 *1092
 
 Semenzas received stated that Means personally oversaw every phase of the planning and development. At the time of the flooding, the Semenzas claim that Means responded promptly to their complaints and indicated that he could handle the problems without consultation with Caughlin’s other officers and board members.
 
 [1]
 

 The Semenzas claim that they pursued a negligence claim against Means because construction superintendent Anderson allegedly told them that after placing an engineered drainage system in one house, Means personally decided not to install such a system in the Semenzas’ home because of the cost.
 
 See infra
 
 note 2. The Semenzas repeated these allegations in their sworn answers to interrogatories. However, the Semenzas never corroborated these allegations by deposing Anderson, and the Semenzas’ counsel talked to Anderson just prior to trial and learned that the house with an engineered drainage system was a house that was not built until after the Semenza residence was constructed.
 
 [2]
 

 Respondents contend that the Semenzas never had a basis for complaining against Means because Caughlin’s corporate records clearly indicated that Caughlin was not a shell for Means.
 
 *1093
 
 Respondents also claimed that Means was sued for purposes of harassment, and that in any event, a plaintiff should determine whether an alter ego claim is valid prior to naming a party. They note that the Semenzas did not even depose Means until two weeks prior to trial to determine if an alter ego theory was justified. As for the negligence claim, respondents argued that the Semenzas never demonstrated a reasonable basis for pursuing such a cause of action against Means.
 

 
 *1092
 
 Naming Alan Means as a defendant was done on a good faith belief that Alan Means had personal responsibility for the defects in the Semenzas’ residence. [Based on correspondence and discussions with the Semenzas, it] appeared to me that there was sufficient reason to believe that he had personal responsibility.
 

 . . . My experience has been that developers frequently set up shell entities as “the developer” for the sole purpose of avoiding liability. The key factor recognized in piercing the corporate veil is undercapita-lization. We cannot learn much about the capitalization of a corporation without first having filed suit and pursuing discovery.
 

 Besides the alter-ego theory, my clients and I believe we had sufficient facts to support claims directly against Alan Means. Our primary source for this information was Mr. Eric Anderson. My clients had already spoken to Mr. Anderson before I became involved. I too talked to Mr. Anderson by telephone on several occasions in March and April 1993. Mr. Anderson told me that the reason the Semenzas’ drainage system was defective was because Alan Means refused to pay to have an engineered system installed. I understood Mr. Anderson to tell me that Mr. Means had paid for an engineered system in another residence and because of the cost of installing that system had decided not to use that type of system in the Semenzas’ residence for the sole purpose of saving money. It wasn’t until just prior to trial that I learned from Mr. Anderson that the other house he was talking about with the engineered system was not constructed until after the Semenza residence was constructed.
 

 
 *1093
 
 In addition to the flooding, the Semenzas also complained to Caughlin about water and dust penetration through faulty window construction. Caughlin performed some remedial work, but the faulty windows needed replacement, which the Semenzas’ investigator admitted was the responsibility of the window manufacturer. No mention of the windows was made in the Semenzas’ October 1993 Answers to Interrogatories. On December 23, 1993, just days before trial and three days after the time for serving an offer of judgment had passed, the Semenzas formally requested damages for the faulty windows in a pretrial statement. Caughlin, who had served a general offer of judgment for $20,000.00 three days previously, claimed that the request was untimely and filed a motion in limine to preclude evidence of damages related to the windows. The Semenzas claim that Caughlin was fully aware of the extent of window damage and that Caughlin included the damage in its offer of judgment. The district court denied Caughlin’s motion in limine, and evidence of window damage was admitted at trial.
 

 On the first day of trial, the Semenzas voluntarily dismissed all of their claims against Means except the negligence claim. The Semenzas admitted that the discovery process revealed that Means was not the alter ego of Caughlin. However, they pursued the negligence claim believing that as president and a touted civil engineer who was aware of drainage problems in some of the housing, Means had a duty to ensure that the Semenzas’ home had a proper drainage system. Also, in opening argument and post-trial motions, the Semenzas argued that Means failed to adequately supervise the construction and knowingly hired inexperienced supervisors.
 

 At trial, Anderson was never questioned about his prior statement implicating Means, and he testified that Means was never involved in any decisions regarding drainage systems. The slight flooding problems in the crawl spaces of other homes were discussed at Caughlin construction meetings, but Anderson testified that Means was not in attendance when the water problems were discussed. Apparently, Caughlin and Means were totally unaware that an inadequate drainage system had been installed in
 
 *1094
 
 the Semenzas’ home, although the Semenzas attempted to demonstrate that Caughlin failed to construct the home and grade the lot in a manner that would provide adequate drainage.
 

 Following the Semenzas’ case in chief, the court found that the Semenzas presented no evidence indicating that Means was negligent in an individual capacity relating to the flooding of the Semenzas’ home. Therefore, the district court granted Means’ motion to involuntarily dismiss the negligence claim against him. NRCP 41(b). At the conclusion of the trial, the jury found against Caughlin and awarded the Semenzas $30,175.00 damages.
 

 In several post-trial motions, the parties sought awards of attorney’s fees and costs. Means and Caughlin were represented by the same attorney and no division of costs or fees was made as between the two parties. Means argued:
 

 [Tjhese amounts should not be split in half — the claims brought against Caughlin are identical to those brought against Mr. Means and as a result, their defenses were identical. There was no legal work done solely for either Caughlin or Mr. Means, and Mr. Means attorney’s fees would not have been less if Caughlin was not involved.
 

 Likewise, Semenzas’ attorney did not separate the fees incurred in pursuing the claims against Means from the claims against Caughlin. Ultimately, the district court entered a fee order and a cost order. In its fee order, the district court wrote, in pertinent part:
 

 It is hereby Ordered that the plaintiffs pay $37,910.75 in attorney’s fees to the defendant, Allan [sic] Means, because he is a prevailing party and the claim against him was brought without reasonable grounds. Defendant Caughlin Crafted Homes is ordered to pay the plaintiffs $55,214.50 in attorney’s fees. These awards are based on NRS 18.010.
 

 In its cost order, the district court wrote: “It is hereby Ordered that defendant Caughlin Crafted Homes shall pay to the plaintiffs their costs in the sum of $13,091.93 and the plaintiffs shall pay to defendant Alan Means his costs in the sum of $14,489.25.” No other findings of fact are included in the record. The district court then entered two separate judgments, one favoring the Semenzas and one favoring Means, which incorporated the fee order and the cost order. The Semenzas filed a motion asking the district court to reconsider its fees order and costs order, and they filed another motion asking the court to amend or alter the judgment. Without explanation, the district court denied both motions. On June 1, 1994, the Semenzas filed a notice of appeal.
 

 
 *1095
 

 DISCUSSION
 

 Whether the district court abused its discretion in awarding Means attorney’s fees.
 

 NRS 18.010(2)(b) provides:
 

 In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney’s fees to a prevailing party:
 

 (b) Without regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought without reasonable ground or to harass the prevailing party.
 

 We have held that an award of attorney’s fees under NRS 18.010(2)(b) is discretionary with the district court. Foley v. Morse & Mowbray, 109 Nev. 116, 124, 848 P.2d 519, 524 (1993). To support such an award, however, “there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party.” Chowdhry v. NLVH, Inc., 109 Nev. 478, 486, 851 P.2d 459, 464 (1993).
 

 In Bergmann v. Boyce, 109 Nev. 670, 856 P.2d 560 (1993), this court, citing Fountain v. Mojo, 687 P.2d 496, 501 (Colo. Ct. App. 1984), recognized that a claim is groundless if the complaint contains allegations which are not supported by any credible evidence at trial.
 
 See also
 
 Allianz Ins. Co. v. Gagnon, 109 Nev. 990, 996, 860 P.2d 721, 724 (1993) (quoting Western United Realty, Inc. v. Isaacs, 679 P.2d 1063, 1065-69 (Colo. 1984) (attorney’s fees allowable if action is frivolous or groundless, i.e., cannot be supported by any credible evidence at trial)). In
 
 Bergmann,
 
 this court stated: “In assessing a motion for attorney’s fees under NRS 18.010(2)(b), the trial court must determine whether the plaintiff had reasonable grounds for its claims. Such an analysis depends upon the actual circumstances of the case. . . .”
 
 Bergmann,
 
 109 Nev. at 675, 856 P.2d at 563. Recently, in Duff v. Foster, 110 Nev. 1306, 885 P.2d 589 (1994), this court approvingly cited the case of State of Florida, Dep’t of Health and Rehabilitation Services v. Thompson, 552 So. 2d 318 (Fla. Dist. Ct. App. 1989), for the following proposition: “ ‘If an action is not frivolous when it is initiated, then the fact that it later becomes frivolous will not support an award of fees.’ ”
 
 Duff,
 
 110 Nev. at 1309, 885 P.2d at 591 (quoting
 
 Thompson,
 
 552 So. 2d at 319).
 

 The Semenzas argued that Means should not receive his full
 
 *1096
 
 attorney’s fees because all of their claims against Means, except negligence, were voluntarily dismissed prior to trial. They note, therefore, that these dismissed claims had not proceeded to judgment. Works v. Kuhn, 103 Nev. 65, 68, 732 P.2d 1373, 1376 (1987) (quoting Sun Realty v. District Court, 91 Nev. 774, 775 n.2, 542 P.2d 1072, 1073 (1975) (“[A] party to an action cannot be considered a prevailing party within the contemplation of NRS 18.010, where the action has not ‘proceeded to judgment’”)). We disagree.
 

 The district court awarded Means attorney’s fees because “the
 
 claim
 
 against him was brought without reasonable grounds.” (Emphasis added.) Arguably, by voluntarily dismissing four of the five claims, the Semenzas merely refined their action against Means. Thus, the district court properly considered an award of full attorney’s fees for the remaining, but unsuccessful, negligence claim which proceeded to judgment.
 
 Id.
 

 However, we also conclude that the district court erred in finding that the Semenzas brought their negligence claim against Means without reasonable grounds. Although the Semenzas did not present evidence at trial in support of their original theory involving an alleged decision by Means to forego the expense of an engineered drainage system, an analysis of the actual circumstances of the case — namely, the discovery that this theory was inaccurate — reveals that the naming of Means was not unreasonable or meant to harass Means. In their answers to interrogatories, dated October 15, 1993, and attested to October 26, 1993 (several months after the filing of their complaint), the Semenzas stated -their belief that Means personally decided to forego a drainage system in their home because of cost. Whether or not this was a misunderstanding, this belief appears to provide a reasonable ground for bringing a claim against Means individually, especially where the drainage in fact was deficient. Moreover, there is no evidence in the record that the Semenzas intentionally made false allegations or disregarded the truth prior to naming Means, which is another factor in considering whether to award attorney’s fees under NRS 18.020(2)(b).
 
 See Allianz Ins. Co.,
 
 109 Nev. at 996, 860 P.2d at 724. Consequently, we vacate the award of attorney’s fees to Means.
 

 Whether the district court erred in refusing to include the award of costs to Means in the Semenzas’ award of costs.
 

 The Semenzas argue that the district court erred in failing to pass Means’ costs, assessed against them, through to Caughlin,
 
 *1097
 
 the nonprevailing defendant. Respondents counter that it would be against public policy to allow a losing plaintiff who has frivolously filed a claim and is penalized under NRS 18.010(2)(b) to transfer the costs owed to a prevailing defendant to a losing defendant. They claim that this would encourage plaintiffs to increase the number of defendants notwithstanding the weakness of their case against them. We agree with the Semenzas.
 

 In Schouweiler v. Yancey Co., 101 Nev. 827 , 712 P.2d 786 (1985), a homeowners association sued six different construction companies who were represented by six different counsel. Three of the defendant construction companies lost and three prevailed. Referring to the homeowners’ motion to pass prevailing defendants’ costs through to the losing defendants, this court stated:
 

 Judgment was entered against [the three losing defendants] in favor of Homeowners; therefore, Homeowners prevailed against these defendants. Because the [three] prevailing defendants ... are allowed to tax their costs against Homeowners pursuant to NRS 18.020, these costs become costs incurred by Homeowners. Accordingly, we conclude that the costs of the prevailing defendants may be recovered by Homeowners from the losing defendants pursuant to NRS 18.020.
 

 Id.
 
 at 832, 712 P.2d at 789;
 
 see also
 
 Flamingo Realty v. Midwest Development, 110 Nev. 984, 993, 879 P.2d 69, 74 (1994). Given our conclusion that the Semenzas’ claim against Means was not brought without reasonable grounds and given the policy reasons underlying
 
 Schouweiler,
 
 we conclude that the Semenzas may recover from the losing defendant the costs they were obligated to pay to the prevailing defendant.
 

 Whether the district court abused its discretion in awarding the Semenzas attorney’s fees.
 

 The district court granted the Semenzas attorney’s fees based on NRS 18.010. NRS 18.010(1) provides: “The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.” In their post-trial motions, the Semenzas urged the district court to grant attorney’s fees based on a broadly worded purchase agreement, which provided as follows:
 

 In the event of any action between Buyer and Seller seeking enforcement of any of the terms and conditions of this Agreement, or in connection with the Property, the prevailing party in such action shall be awarded, in addition to damages, injunctive, or other relief, its reasonable costs
 
 *1098
 
 and expenses, including but not limited to taxable court costs and reasonable attorneys’ fees.
 

 This action resulting from the flooding of the Semenzas’ basement was “in connection with the Property,” and the Semenzas, as between the buyer and seller, were the prevailing party.
 
 [3]
 
 Consequently, we conclude that the district court did not err in awarding the Semenzas their reasonable attorney’s fees. We therefore affirm the district court’s award of attorney’s fees to the Semenzas.
 

 We believe it unnecessary to remand the case to the district court to apportion the fees that the Semenzas’ attorney expended in pursuit of claims against Means as opposed to those against Caughlin because the efforts made to expose Means’ negligence individually were intertwined with efforts to prove that Caughlin, acting through Means and other agents and employees, was negligent. An officer of a corporation may be individually liable for any tort which he commits, and, if the tort is committed within the scope of employment, the corporation may be vicariously or secondarily liable under the doctrine of respondeat superior.
 
 See
 
 Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978).
 

 We have considered all other arguments presented in the parties’ briefs, supplemental motions, and during oral argument, and conclude that they are without merit.
 

 CONCLUSION
 

 For the aforementioned reasons, we vacate the award of attorney’s fees granted to Means and remand the case to the district court with instructions to include in the award of costs to the Semenzas, the costs awarded to Means. We also affirm the fee award to the Semenzas.
 

 [1]
 

 The Semenzas’ attorney, in a post-trial affidavit, also stated the following reason for naming Means:
 

 [2]
 

 In the same post-trial affidavit referred to in note 1, the Semenzas’ attorney stated:
 

 [3]
 

 Respondents urge this court to vacate the award of attorney’s fees to the Semenzas on the grounds that their offer of judgment exceeded the award of damages less the damages associated with the belated claims relating to window damage. We disagree. Respondents were aware of the damaged windows prior to submitting their offer of judgment, and their offer of judgment never specified that the offered amount was solely for the damages caused by flooding.